UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAURA GONZÁLEZ-VERA, et al.,

Plaintiffs,

v.

MICHAEL VERNON TOWNLEY, et al.,

Defendants.

Civil Action No. 14-68 (JDB)

## MEMORANDUM OPINION

Defendant Michael Vernon Townley is in hiding. And for good reason. He was the star witness against several defendants in a 1979 criminal case concerning the assassination of Orlando Letelier, the former Chilean ambassador to the United States. See Compl. [ECF No. 1] at 2. In exchange for this testimony, the federal government placed Townley in a witness protection program, where he has remained for almost thirty years. See id.

But Townley is also a debtor. The plaintiffs in this case, Laura González-Vera and Ali Beydoun (as representative of the estate of Carmelo Soria Espinoza), obtained a default judgment against Townley—to the tune of more than $7 million—for his role in the 1976 kidnap, torture, and murder of González-Vera's husband in Santiago, Chile. See id. Frustrated in their efforts to collect on that judgment, plaintiffs have asked this Court for help. They seek, among other things, to require the Attorney General "to determine whether . . . Townley is making reasonable efforts to comply with the judgment against him," to compel "Townley to make all required payments" to plaintiffs, and to order the Department of Justice "to disclose" Townley's location. Id. at 11–12. But these claims are either moot, unauthorized by the governing statute, or both, and the Court

1

will accordingly grant the government's motion to dismiss this case for lack of subject-matter jurisdiction and for failure to state a claim.[1]

## BACKGROUND

### I.     STATUTORY BACKGROUND

This case involves the application of a rarely used (and, thus, rarely interpreted) statute: the Witness Security Reform Act of 1984, 18 U.S.C. § 3523. See Gonzalez-Vera v. Townley, 595 F.3d 379 (D.C. Cir. 2010) (interpreting the statute); Hermanson v. Hunter, 794 F. Supp. 2d 1097 (S.D. Cal. 2008) (same).  Generally speaking, the Act allows plaintiffs who hold a civil judgment against an (otherwise unreachable) individual in the federal witness protection program to sue for the appointment of a guardian, who will help those plaintiffs collect their unpaid debts.  But there are several nuances to this cause of action, as reflected in the following provisions relevant to the present case:

> (a) If a judgment . . . is entered against [a protected person] the Attorney General shall determine whether the person has made reasonable efforts to comply with the judgment.  The Attorney General shall take appropriate steps to urge the person to comply with the judgment.  If the Attorney General determines that the person has not made reasonable efforts to comply with the judgment, the Attorney General may, after considering the danger to the person and upon the request of the person holding the judgment disclose the identity and location of the person to the plaintiff entitled to recovery pursuant to the judgment . . . .
>
> (b)(1) Any person who holds a judgment entered by a Federal or State court in his or her favor against a person provided protection under this chapter may, upon a decision by the Attorney General to deny disclosure of the current identity and location of such protected person, bring an action against the protected person in the United States district court in the district where the person holding the judgment . . . resides.  Such action shall be brought within one hundred and twenty days after the petitioner requested the Attorney General to disclose the identity and location of the protected person . . . .

---

[1] See Gov't's Mot. to Dismiss [ECF No. 14] ("Gov't's Mot."); Pl.'s Opp'n to Gov't's Mot. [ECF No. 17] ("Pl.'s Opp'n"); Gov't's Reply in Support of Gov't's Mot. [ECF No. 20]; Pl.'s Mot. for Leave to File Surreply [ECF No. 23] ("Pl.'s Surreply Mot."); Gov't's Opp'n to Pl.'s Surreply Mot. [ECF No. 24] ("Gov't's Opp'n"); Pl.'s Reply to Gov't's Opp'n [ECF No. 25].

> (b)(3) Upon a determination (A) that the petitioner holds a judgment entered by a Federal or State court and (B) that the Attorney General has declined to disclose to the petitioner the current identity and location of the protected person against whom the judgment was entered, the court shall appoint a guardian to act on behalf of the petitioner to enforce the judgment . . . . The Attorney General shall disclose to the guardian the current identity and location of the protected person . . . .

18 U.S.C. § 3523. As certain members of Congress have explained, these provisions—and their nuances—are meant to "strike . . . a balance" between the rights of "otherwise innocent persons . . . to litigate civil claims for damages" and the need "to ensure protection of the witness." S. Rep. No. 98-225, at 411 (1983).

## II. FACTUAL & PROCEDURAL BACKGROUND

While the Witness Security Reform Act is not often litigated, the parties (and the courts in this Circuit) have wrestled with this statute once before. After winning a $7 million default judgment against Townley for his role in the "torture and murder of Carmelo Soria Espinoza," plaintiffs "asked the Attorney General to help them collect the judgment pursuant to 18 U.S.C. § 3523." Gonzalez-Vera, 595 F.3d at 380. The Attorney General, acting through the director of the witness protection program and after reviewing Townley's finances, determined that it was reasonable for Townley to pay plaintiffs $75 per week to satisfy the judgment against him. But this conclusion did not sit well with plaintiffs, who (accordingly) sued Townley and the Attorney General in federal district court in 2007. See id. at 381.

The district court dismissed plaintiffs' case, however, and the D.C. Circuit affirmed. Id. at 380, 381. The rationale was clear: although section 3523(b)(1) of the Witness Security Reform Act "permits a judgment-holder to sue for the appointment of a guardian 'upon a decision by the Attorney General to deny disclosure,'" id. at 382, plaintiffs were not in a position to take advantage of that provision. As the Circuit explained, the statute contains a prerequisite that plaintiffs had not yet satisfied: "subsection (b)(1) is triggered only 'upon a decision by the Attorney General to

deny disclosure'—a decision the Attorney General can make only if the protected person is <u>not</u> making reasonable efforts to satisfy the judgment." Id. at 383 (quoting 18 U.S.C. § 3523). And there, the Attorney General had reached just the opposite conclusion, finding that Townley's $75 per week payments <u>met</u> the "reasonable efforts" threshold. Id. The Attorney General therefore had "no authority to disclose [Townley's location] to the judgment-holder," and plaintiffs' claims had to be dismissed. Id.

Following this earlier case, plaintiffs (perhaps unsurprisingly) continued to experience problems collecting the money owed them. Plaintiffs allege that in "June, July, August, September, November, and December 2013, as well as January 2014," Townley failed to make his required payments—a total of $2,275. Compl. at 2. And so they again sought the help of the Department of Justice, sending two letters to the Department: one to a representative of the Department's Office of Enforcement Operations, and one to Attorney General Eric Holder. Id. at 5. The letters asked "the Attorney General [to] fulfill his statutory duty . . . to determine whether Defendant Townley had made 'reasonable efforts' to comply with the judgment and, if the Attorney General determined that [Townley] had not, to exercise his discretion to disclose the identity and location of . . . Townley" to plaintiffs. Id. at 6. A flurry of letters back and forth resulted in plaintiffs receiving one $325 check from Townley for the missed October 2013 payment, but plaintiffs did not immediately receive any other payments, nor did the Department immediately conduct a new "reasonable efforts" determination regarding Townley. See id. at 6–8. Frustrated, plaintiffs filed their complaint in this case. See id. at 7–8.

But the story does not end there. After plaintiffs filed the present complaint, the Office of Enforcement Operations completed a second review of Townley's finances, including his "bank and mortgage statements, tax returns, and a sworn financial affidavit detailing his assets and

4

liabilities." Att. 2 to Gov't's Mot. [ECF No. 14-2] ("Roth Decl.") at 5. "Based upon that review, . . . [the Office] concluded that Townley's weekly payments in the amount of $75 continue[] to constitute reasonable efforts to comply with the [plaintiffs'] judgment" against him. Id. Moreover, although the Office found that Townley's missed payments "did not amount to a failure to make reasonable efforts," it nonetheless "urged Townley to resume payments," and it "cautioned Townley that failure to resume and maintain payments could result in a [different reasonable-efforts] determination." Id. (emphasis added).

## DISCUSSION

Against this backdrop, the government has filed a motion to dismiss plaintiffs' complaint, arguing that this Court lacks subject-matter jurisdiction over certain of plaintiffs' claims (the Rule 12(b)(1) argument), and that plaintiffs' remaining contentions fail to state a claim (the Rule 12(b)(6) argument). Plaintiffs, for their part, oppose this motion and have lodged one of their own, asking for leave to file a surreply to the government's motion to dismiss. The Court will address each of these disputes in turn.

### I.   12(b)(1) MOTION TO DISMISS

Defendants first argue that several of plaintiffs' claims should be dismissed because they are moot, and thus this Court lacks the power to hear them. "The mootness doctrine . . . limits federal courts to deciding actual, ongoing controversies." Clarke v. United States, 915 F.2d 699, 700–01 (D.C. Cir. 1990) (en banc) (internal quotation marks omitted). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). And a case can become moot "[e]ven where litigation poses a live controversy when filed . . . if events have so transpired that the

decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Clarke, 915 F.2d at 701 (internal quotation marks omitted).

"[E]vents have so transpired" here. Id. A pillar of plaintiffs' claim is that—at the time the complaint was filed—"[t]he Attorney General ha[d] failed to comply with his statutory obligation to determine whether [Townley] has made reasonable efforts to comply with the judgment, [and] to urge [Townley] to comply with th[at] judgment." Compl. at 8 (internal quotation marks omitted). Indeed, it is this allegation that gave rise to several of plaintiffs' prayers for relief. See id. at 11. But the situation has changed. It is undisputed that on June 19, 2014, the Office of Enforcement Operations completed a review of Townley's finances and determined that a weekly payment to plaintiffs in the amount of $75 still constituted "reasonable efforts" within the meaning of the law. See Roth. Decl. at 5. And it is undisputed that on that same day the Office sent Townley a letter which "urged [him] to resume payments within fourteen days of receipt of the letter and to pay the existing arrearages within ninety days." Id. The government, in short, has already done much of what plaintiffs have asked this Court to force the government to do. These claims are therefore moot. See, e.g., Gray v. Office of Pers. Mgmt., 771 F.2d 1504, 1514 (D.C. Cir. 1985) ("It is manifestly unnecessary to compel [an agency] to act on appellants' claim, inasmuch as [the agency] rendered its decision nearly two years ago.").

Plaintiffs, of course, disagree. They argue that these claims are not moot because—even though the government has now made a reasonable-efforts determination—"it failed to [do so] within the statutory deadline." Pl.'s Opp'n at 11. But what deadline? By its terms, the statute only imposes a deadline on the judgment holder, who must bring her complaint in federal district court "within one hundred and twenty days after the petitioner requested the Attorney General to disclose the identity and location of the protected person." 18 U.S.C. § 3523(b)(1). The statute,

by contrast, is silent concerning timelines for the Attorney General's reasonable-efforts activities. Congress, it should go without saying, knows how to impose deadlines on the Executive Branch when it wants to. See, e.g., id. § 3525(b) ("Not later than four months after the end of each fiscal year, the Attorney General shall transmit to the Congress a detailed report on payments made under this section for such year."). But this Court will not rewrite the law to infer a deadline that Congress has not proposed, voted upon, or approved. See Nat'l Rifle Ass'n of Am., Inc. v. Reno, 216 F.3d 122, 127 (D.C. Cir. 2000) ("When Congress wants to instruct an agency not only to take certain action, but to take it immediately, it knows how to do so.").

Nor do plaintiffs' arguments at a motions hearing in this case change things. Plaintiffs suggest that although the Witness Security Reform Act says nothing explicit about deadlines for the Attorney General, it is the Department's internal practice to complete all reasonable-efforts determinations within 120 days. But plaintiffs can point to nothing in the record that formally establishes this practice within the Department. And it would not matter if they could. "As a general rule, the internal operating procedures of [an agency] do not create rights [for plaintiffs,] and thus a violation of these procedures does not establish a cause of action for [those plaintiffs]." Oxford Capital Corp. v. United States, 211 F.3d 280, 285 n.3 (5th Cir. 2000); see also Envtl. Def. Fund, Inc. v. Massey, 986 F.2d 528, 530 (D.C. Cir. 1993) ("Although the procedural requirements imposed by the Executive Order are analogous to those under NEPA, the . . . Order does not provide a cause of action to a plaintiff . . . [because it] explicitly states that the requirements contained therein are solely for the purpose of establishing internal procedures for Federal agencies." (internal quotation marks omitted)).

Plaintiffs argue next that these claims are not moot because the harms they have suffered are "capable of repetition yet evading instant review." Pl.'s Opp'n at 14 (emphasis added). There

are several problems with this argument, however.  For one thing, plaintiffs misstate the parameters of this carve-out from the usual mootness rules.  "The capable-of-repetition doctrine applies only in [those] exceptional situations . . . [where the duration of the harm alleged] is <u>always</u> so short as to evade review."  <u>Spencer v. Kemna</u>, 523 U.S. 1, 17–18 (1998) (emphasis added) (internal quotation marks omitted).  That is to say, the doctrine applies only where a harm can <u>never</u> be reviewed; it nowhere guarantees plaintiffs the "instant" review they seem to expect.  For another thing, plaintiffs' circumstances do not meet the doctrine's requirements, properly stated.  The carve-out negates mootness where "the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration," <u>Lewis v. Cont'l Bank Corp.</u>, 494 U.S. 472, 481 (1990) (internal quotation marks omitted), and plaintiffs' situation does not meet that description—especially not when plaintiffs have succeeded in fully litigating (through appeal, no less) a previous case alleging the same or similar harms, see <u>Gonzalez-Vera</u>, 595 F.3d at 379.

Finally, plaintiffs contend that the Court should not dismiss these claims because the government "alleged material facts outside the scope of the pleadings" in making its mootness argument.  Pl.'s Opp'n at 19.  Specifically, plaintiffs take issue with a declaration attached to the government's motion to dismiss, which explains how the Office of Enforcement made a new reasonable-efforts determination based on Townley's finances.  <u>See</u> <u>id.</u> at 20–21; Roth Decl. at 3–5.  Plaintiffs, as a result, ask the Court to convert the government's motion to dismiss into one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).  But this argument gets plaintiffs nowhere.  In the Rule 12(b)(1) context, "the court may consider the complaint supplemented by undisputed facts evidenced in the record" to determine whether it has jurisdiction over a claim.  <u>Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).  And here, no party disputes that the Attorney General recently completed a review of Townley's payment efforts

and urged him to comply with his obligations.  See, e.g. Pl.'s Opp'n at 20–21.  Any remaining dispute between the parties concerns the adequacy of the government's "reasonable efforts" and "urging" activities—but that is, of course, a legal question, not a factual one requiring conversion to summary judgment with an opportunity to present further factual information.[2]  These claims thus remain subject to dismissal.

## II.     12(b)(6) MOTION TO DISMISS

A portion of plaintiffs' complaint therefore falls by the wayside.  But what of plaintiffs' other claims for relief?  The government argues that these claims, too, are subject to dismissal, but this time it relies on Rule 12(b)(6).  When deciding a 12(b)(6) motion to dismiss, the Court must presume that the factual allegations in the complaint are true, and it must give plaintiffs every favorable inference that can be drawn from those facts, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), though the Court need not accept as true any "legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986).  And to survive a motion to dismiss of this type, plaintiffs' complaint must contain only "a short and plain statement of the claim showing that [they are] entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  Although this standard is not overly taxing, plaintiffs have failed to meet it here for any of their remaining claims.

Begin with plaintiffs' call for an order appointing a guardian and mandating disclosure of Townley's new identity and location.  See Compl. at 11–12.  To be sure, the Witness Security Reform Act contemplates relief of this sort in some settings.  See, e.g., 18 U.S.C. § 3523(b)(3)

---

[2] Plaintiffs have offered no legal basis (at least, no persuasive legal basis) for converting the government's Rule 12(b)(1) motion to dismiss into a motion for summary judgment.  On their face, the Federal Rules' conversion guidelines apply only to motions "under Rule 12(b)(6) or 12(c)," and do not apply to subject-matter-jurisdiction motions under 12(b)(1).  See Fed. R. Civ. P. 12(d).  The case law confirms this reading of the rules.  See Haase v. Sessions, 835 F.2d 902, 905 (D.C. Cir. 1987) ("It seems clear . . . that the plain language of [the conversion rule] permits only a 12(b)(6) motion to be converted into a motion for summary judgment.").

("[T]he court shall appoint a guardian to act on behalf of the petitioner," and "[t]he Attorney General shall disclose to the guardian the current identity and location of the protected person."). But as the D.C. Circuit made clear in the first iteration of this case, that relief is <u>only</u> available where the Attorney General has decided that "the protected person is <u>not</u> making reasonable efforts to satisfy the judgment." <u>Gonzalez-Vera</u>, 595 F.3d at 383. And, just as in that earlier case, plaintiffs have failed to allege that the Attorney General made any such decision here—nor could they so allege. <u>See</u> Roth Decl. at 6 ("Townley was making reasonable efforts to comply with the judgment."). The outcome in this case must therefore be the same as in the previous case: plaintiffs' guardianship and disclosure claims will be dismissed.

Plaintiffs' other claims for relief are similarly flawed—the Witness Security Reform Act simply does not allow them. As previously described, the Act authorizes just one form of relief for plaintiffs who satisfy the necessary prerequisites: "the court shall appoint a guardian to act on behalf of the petitioner to enforce the judgment[,] . . . [and] [t]he Attorney general shall disclose to the guardian the current identity and location of the protected person." 18 U.S.C. § 3523(b)(3). This remedy is, of course, nothing to sneeze at. There are significant dangers involved in disclosing a protected person's identity and location—even to a guardian. <u>See</u> <u>Gonzalez-Vera</u>, 595 F.3d at 384. But this remedy is also quite circumspect. It certainly does not encompass the varied (and broad) relief that plaintiffs have asked for here, including a court order enjoining defendants from withholding payments, compelling Townley to make payments, and granting "other equitable relief as this Court may deem just and proper." Compl. at 11–12. All of these claims must be dismissed as outside the scope of the governing law.

In response, plaintiffs assert that they need not rely on the Witness Security Reform Act to support their claims, because they also brought these claims pursuant to 28 U.S.C. § 1361, the

general mandamus statute. See Pl.'s Opp'n at 15–16. Surely, plaintiffs contend, this law supports their request for broad injunctive relief. Not so, for two reasons. First, to the extent plaintiffs seek an order compelling or enjoining Townley's behavior in some way, mandamus cannot support these claims. That statute allows courts "to compel an officer or employee of the United States . . . to perform a duty owed to the plaintiff," and it thus does not apply to private citizens like Townley. 28 U.S.C. § 1361 (emphasis added). Second, mandamus does not justify plaintiffs' requests even against the Attorney General. Mandamus comes into play only where, among other things, "the defendant owes . . . a clear nondiscretionary duty" to plaintiffs. Heckler v. Ringer, 466 U.S. 602, 616 (1984). And here, plaintiffs have failed to identify any source (let alone a "clear nondiscretionary" one) for the "dut[ies]" they believe the Attorney General still owes them. What statute, for example, requires the Attorney General "to communicate with Plaintiffs regarding . . . Townley's efforts to satisfy th[e] judgment"? Compl. at 11. Plaintiffs cannot say, which is fatal to their claims for relief. Mandamus, after all, does not create "clear nondiscretionary dut[ies]" out of whole cloth. Nor can mandamus impose duties on the Attorney General that are, as explained above, contradicted by the language and structure of the Witness Security Reform Act.

Plaintiffs also argue that their request for appointment of a guardian and disclosure of Townley's location ought to survive, because the government's "reasonable efforts" determination and the Attorney General's "efforts to urge compliance were insufficient." Pl.'s Opp'n at 13. Indeed, plaintiffs consider the Attorney General's efforts to this point to be "meaningless" and an exercise in "form over substance." Id. But this argument falls short as well, both substantively and procedurally. On the substance: as described above, the Witness Security Reform Act authorizes courts in some circumstances to appoint a guardian to whom a protected person's identity and location can be disclosed, see 18 U.S.C. § 3523(b)(3); it nowhere authorizes the courts

11

to second-guess an Attorney General's activities concerning that protected person.  And on procedure:  plaintiffs' complaint does not raise an adequacy challenge; in fact, the complaint assumes, for example, that the Attorney General has failed to make any reasonable-efforts determination <u>at all</u> concerning Townley.  <u>See, e.g.</u>, Compl. at 9.  But it is beyond dispute that an opposition to a motion to dismiss is the wrong place for such new claims.  <u>See</u> <u>Morris v. Carter Global Lee, Inc.</u>, 997 F. Supp. 2d 27, 42–43 (D.D.C. 2013).  Dismissal under Rule 12(b)(6) thus remains the right result in this case.

### III. LEAVE TO FILE SURREPLY

This leaves just one loose end:  plaintiffs hope to file a surreply opposing the government's motion to dismiss.  As plaintiffs see things, they deserve the final word in this case, because they have uncovered new "documentation and information" that was "not available . . . when the Plaintiffs submitted their Opposition on September 11, 2014."  Pl.'s Surreply Mot. at 1–2.  Supposedly, this information reveals government "miscalculations" regarding Townley's payment obligations as well as two recently discovered "media projects" involving Townley—namely, the alleged production of "a movie mini-series" about Townley's life and his alleged appearance as an animated character in "Grand Theft Auto V," a popular (in some circles, at least) video game.  Pl.'s Surreply [ECF No. 23-1] at 2, 3.  Plaintiffs believe this new information is important to their cause, because it suggests that Townley might now be in a better position to satisfy the sizeable judgment against him.  <u>See</u> <u>id.</u> at 3.

But nothing about this information justifies more briefing in this case.  As the courts have made clear, "[a] surreply may be filed . . . <u>only</u> to address new matters <u>raised in a reply</u>, to which a party would otherwise be unable to respond."  <u>United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.</u>, 238 F. Supp. 2d 270, 276 (D.D.C. 2002) (emphasis added).  That is to say, the

point of a surreply is to allow a party to respond to an opponent's new facts and arguments—not to unearth facts and arguments never before raised. And here, plaintiffs have made no effort to tie their new information to anything in the government's reply brief.[3] Indeed, most of the purported new information relates only to plaintiffs' challenge to the merits of the Attorney General's reasonable-efforts determination, which is not properly before the Court in any event. The surreply is thus inappropriate and may not be filed.

## CONCLUSION

The Court will therefore deny plaintiffs' motion for leave to file a surreply and grant the government's motion to dismiss this case in its entirety. To be sure, this result leaves plaintiffs, "though dissatisfied with Townley's efforts to pay, without a remedy in these proceedings." Gonzalez-Vera, 595 F.3d at 384. But this is the balance that Congress has struck between a witness's need for protection and a judgment holder's need for payment. And in this case, while plaintiffs "remain[] free to seek a fresh [reasonable-efforts] determination should [they] have reason to believe that Townley's financial circumstances have changed," id., they have failed to show that any of their current claims can survive. A separate Order dismissing plaintiffs' complaint will issue on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: March 19, 2015

---

[3] Plaintiffs' reliance on the standard under Federal Rule of Civil Procedure 15(d) for supplementation of pleadings is misplaced. Motions and related memoranda are not pleadings under the Federal Rules. Compare Fed. R. Civ. P. 7(a) (listing "a complaint," "an answer to a complaint," and other documents as "[p]leadings") with id. 7(b) (describing "[m]otions and [o]ther [p]apers").